**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RICHARD ROBINSON | : | |
| Plaintiff | : | 3:02 CV 2197 (MRK) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| ALBERT ILG, ET AL | : | |
| Defendants | : | FEBRUARY 2, 2004 |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### FACTS

The facts are as presented on the accompanying Local Rule 56(a)(1) Statement of Material Facts Not in Dispute.

### ARGUMENT

**I.    The summary judgment standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme

Court reiterated:

> Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

<u>Id</u>. at 251 (citing <u>Improvement Co. v. Munson</u>, 81 U.S. (14 Wall.) 442, 448 (1872).

The Second Circuit has stated that a "mere existence of a scintilla of evidence in support

of the [non-movant's] position will be insufficient; there must be evidence on which the jury

could reasonably find for the [non-movant]." <u>Yerdon v. Henry</u>, 91 F.3d 370, 374 (2d Cir. 1996),

<u>quoting</u>, <u>Anderson v. Liberty Lobby, Inc.</u>, supra, at 252.  Further, the Second Circuit has stated

that a party opposing summary judgment "cannot rely on inadmissible hearsay in opposing a

motion for summary judgment." <u>Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.</u>,

769 F.2d 919, 924 (2d Cir. 1985).

Although defendant bears the burden of showing that no genuine factual dispute exists,

the plaintiff must make a sufficient showing on the essential elements of his case for which he

bears the burden of proof at trial. <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 884, 110 S.Ct.

3177, 111 L.Ed.2d 695 (1990); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91

2

L.Ed.2d 265 (1986). Therefore, when "a defendant moving for summary judgment has pointed to the absence of evidence to support an essential element on which the plaintiff has the burden of proof, the plaintiff, in order to avoid summary judgment, must show the presence of a genuine issue by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial." Grain Traders, Inc. v. Citibank, N.A., 160 F.3d 97, 100 (2d Cir. 1998) (citations omitted).

## II.    Plaintiff's constitutional claims must fail

In the first, second, third and fourth counts of his Amended Complaint, plaintiff alleges deprivation of procedural and substantive due process against Albert Ilg and the City of Hartford. Because plaintiff did not have a protected property right in his employment, these claims must fail. Even if plaintiff had a protected property right in his employment, he cannot establish either a procedural or a substantive due process violation because he had a pre-deprivation hearing, and because he cannot show that the defendants' conduct was arbitrary, conscience-shocking or oppressive. Finally, plaintiff's constitutional claims against defendant Ilg must fail because of qualified immunity.

"Procedural due process claims concern the adequacy of the procedures provided by the governmental body for the protection of liberty or property rights of an individual." Gordon v. Nicoletti, 84 F.Supp.2d 304, 308 (D.Conn. 2000). To state a claim for a violation of procedural

3

due process, "a plaintiff must demonstrate that he or she possesses a constitutionally protected

interest in life, liberty, or property, and that state action has deprived him or her of that interest."

Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994) (citation omitted). Thus, for the plaintiff "to

establish a procedural due process violation, [he] must: (1) identify a property right [or liberty

interest], (2) establish that governmental action with respect to that property right [or liberty

interest] amounted to a deprivation, and (3) demonstrate that the deprivation occurred without

due process." Rosa R. v. Connelly, 889 F.2d 435, 438 (2d Cir. 1989). (citation omitted). In this

context, it is well-settled that the court should "examine procedural due process questions in two

steps: the first asks whether there exists a liberty or property interest which has been interfered

with by the State; the second examines whether the procedures attendant upon that deprivation

were constitutionally sufficient." Valmonte, 18 F.3d at 998 (quoting Kentucky Dept. of

Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); see also

Alba v. Ansonia Bd. Of Educ., 999 F. Supp. 687, 690 (D. Conn. 1998) (citing Narumanchi v. Bd.

Of Trs. Of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988).

   In contrast, "[s]ubstantive due process claims concern limitations on governmental

conduct toward an individual regardless of the procedural protections." Gordon, 84 F. Supp. 2d at

308 (citation omitted). "Substantive due process protects individuals against government action

that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not

4

against government action that is 'incorrect or ill- advised' .... Moreover, government action might be so arbitrary that it violates substantive due process 'regardless of the fairness of the procedures used.' "Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (citations omitted). "The first step in substantive due process analysis is to identify the constitutional right at stake." Id. (citation omitted). The court must then "consider whether the state action ... was arbitrary in the constitutional sense and therefore violative of substantive due process." Id. See also Parsons v. Pond , 126 F.Supp.2d 205 (D.Conn.2000).

To prevail on either a procedural or a substantive due process claim, plaintiff must first establish that he had a constitutionally protected property interest in his employment. [1] The property interests required for fourteenth amendment protection are not created by the Constitution, but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). See also Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). A property interest may also be created by implied contract if there are "mutually explicit understandings" that support a person's claim. Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d (1976), citing Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). A

---

[1] Plaintiff only alleges a property interest.

"property interest" may include the right to continued employment. <u>Roth</u>, 408 U.S. at 572, 577. In the employment context a property interest is generally created in one of two ways: (1) by an independent source such as a state statute securing certain benefits or rights to a public employee; or (2) by an express or implied promise of continued employment. See <u>Shlay v. Montgomery</u>, 802 F.2d 918, 921 (7th Cir. 1986).

The Supreme Court has instructed that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it[,] [h]e must, instead, have a legitimate claim of entitlement to it." <u>Roth</u>, supra, 408 U.S. at 577. "In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause." <u>S& D Maintenance Co. v. Goldin</u>, 844 F.2d 962, 967 (2d Cir. 1988).

Here, plaintiff has demonstrated no legitimate claim of entitlement to his position as Finance Director which would give rise to a property interest protected by the Due Process Clause. Thus, plaintiff has failed to set forth facts to establish the first element necessary for either a procedural or a substantive due process claim.

The statutory authority governing plaintiff's employment as Finance Director is the City of Hartford Charter, a Special Act of the state legislature. Under Chapter XVI, Section 7 of the Charter, plaintiff's position as a department head is in the unclassified service of the City.

Plaintiff acknowledges that his was not a civil service position. (Robinson deposition, p. 119). Employees in classified civil positions may only be removed for just cause, in accordance with the City of Hartford Personnel Rules and Regulations. The Charter contains no such provision for unclassified positions.

Employees in the classified civil service are not at-will employees. If they perform their duties in a satisfactory manner, they shall not be dismissed without cause. City of Hartford Personnel Rules and Reulations. See also C.G.S. 5-240 ( c). It is thus recognized that classified civil service employees in Connecticut have a property right in continued employment which is protected by the due process clause of the fourteenth amendment. See, e.g.,Fusco v. Motto, 649 F. Supp. 1486 (D. Conn. 1986). Employees in unclassified positions, on the other hand, serve at the will of their appointing authority and can be dismissed at any time without cause. For these employees, there generally is no reasonable expectation of employment and thus no property right. Brady v. Gebbie, 859 F. 2d 1543, 1548 (9th Cir. 1988), cert. denied, 489 U.S. 1100, 109 S. Ct. 1577, 193 L.Ed.2d 943 (1989).

Plaintiff advances another theory to support his claim of a property right in his employment: an oral contract of employment which provided for his continued employment subject to termination only for good cause based on inadequate performance of his duties. Plaintiff asserts that Saundra Kee-Borges, the former City Manager, represented that the plaintiff

7

would not be removed except for cause.  Plaintiff contends that he accepted the position as Finance Director in reliance upon Kee-Borges's representations.  Thus, he argues that an oral contract was created under which he had a property right to continued employment.  Assuming, arguendo, for purposes of this motion, that Kee-Borges did represent to plaintiff that  he would not be removed without cause, plaintiff's claim of a property right fails nevertheless.

"Mutually explicit understandings ... do not create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes. " Chu v. Schweiker, 690 F.2d 330, 334 (2d Cir. 1981).  See also Zimmerman v. Board of Educ. Of Town of Branford, 597 F. Supp. 72, 77 (D. Conn. 1984). ("A contractual provision or mutual understanding contrary to the statutory provision may give rise to a cause of action for breach of contract, but will not give rise to a protectable property interest."). Thus, even if plaintiff could show an implied contract of employment by which he could only be removed for cause, he could not assert a property right based on that contract unless the contract was made pursuant to a statute or authorizing regulation or that Kee-Borges was statutorily authorized to enter into such an agreement. See Brady, supra, 859 F.2d at 1549.

Clearly, Kee- Borges had the statutory authority under the Charter of the City of Hartford to hire plaintiff.  However, she did not have the authority to enter into an employment contract with plaintiff whereby termination could only be effected by a showing of cause.  The City

Charter clearly exempts the position of Finance Director from classified service. As such, the position is one of employment at the will of the incumbent City Manager. Allowing Kee-Borges to make an agreement to the contrary would defeat the Charter's purposes and clear language. See Brady, supra, 859 F.2d at 1550. A contrary holding would allow a city manager to enter into an agreement which would effectively change a legislatively-created unclassified position into a classified one. Id. Plaintiff cannot cite any Charter provision or regulation which purports to give a city manager the authority to enter into an employment contract such as that alleged by plaintiff. Absent any express grant of authority and in view of the fact that implying such authority would conflict with the express language of the City Charter, Kee-Borges had no authority to enter into a contract giving plaintiff a protected right to continued employment. Since Kee-Borges "lacked such authority, plaintiff can make no *legitimate* claim of entitlement to continued employment." Polson v. Davis, 635 F. Supp. 1130, 1141 (D. Kan. 1986). See also Shlay, supra, 802 F.2d at 921 (promise of career employment made by unauthorized official did not create enforceable contract rights, since city was not legally responsible for acts taken by its officials in excess of their authority); and King v. Lensink, 720 F.Supp. 236 (D.Conn.1989).

Moreover, plaintiff cannot claim a property interest in the procedural provisions that govern the removal of appointees of the City Manager. See Chapter V, Section 4 of the City of Hartford Charter. "The issue of what constitutes a substantive property interest is analytically

distinct from the issue of what procedures must be followed if such interest is to be taken away."Furlong v. Shalala, 156 F.3d 384, 395 (2d Cir. 1998) (citation omitted).  As such, "[t]he deprivation of a procedural right to be heard, however, is not actionable when there is no protected right at stake." Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir. 1994) (citations omitted). More specifically, the Second Circuit has held that "the Due Process Clause does not protect against the deprivation of state procedural rights." Westfarms, 951 F.2d at 472 (citations omitted).  This is because, in part, procedural rules are "universal benefits [that] are not property interests" of any one citizen. Id.  Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. Watson v. City of N.Y., 92 F.3d 31, 37-38 (2d Cir. 1996) (quoting Ollim v. Wakinekona, 461 U.S. 238, 250, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), and citing, inter alia,Pugliese v. Nelson, 617 F.2d 916, 924 (2d Cir. 1980) .

Under these authorities, plaintiff has no cognizable property interest in the procedures set forth in the Charter, unless the defendants otherwise deprived him of a property interest in the absence of those procedures. See Rowland v. Hildreth, No. 92 Civ. 6140, 1993 WL 287646 (S.D.N.Y 1993). (" '[F]ederal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure.' " (quoting Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). Because plaintiff cannot establish that he had a property

right in continued employment, his claims for violation of procedural and substantive due process must fail.

Plaintiff received an adequate pre-deprivation hearing

Even if it assumed that plaintiff had a property right in continued employment, his procedural due process claim fails nevertheless because he received a hearing prior to his removal. Prior to that hearing, he was served with a letter evidencing the city manager's intent to remove him from his position and stating the reason for such removal, that is, the fact that he served at the city manager's pleasure and the latter chose to exercise his prerogative under the City Charter to remove him.

Plaintiff had the opportunity to provide evidence and argument that such was not the case, that is, that he was not an at-will employee, and, for that matter, to present anything he wished on his behalf. At the hearing plaintiff was represented by his attorney. Thus, plaintiff received the process he was due, even assuming, arguendo, that he had a property right in continued employment. See Cleveland Board of Educ.v. Loudermill, supra.

Plaintiff cannot show substantive due process violation

Substantive due process claims concern limits on governmental conduct toward an individual regardless of procedural protections. Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. )(citing Monroe v. Pape, 365 U.S. 167, 171-72, 81 S. Ct. 473, 5 L.Ed.2d 492 (1961). The due process

clause was intended to prevent government from abusing its power, or employing it as an instrument of oppression. Interport Pilots Agency v. Sammis, 14 F.3d 133, 144 (2d Cir. 1994).

The Supreme Court has enunciated two alternative tests by which substantive due process is examined. Under the first test, the plaintiff must prove that the governmental body's conduct "shocks the conscience." Pittsley v. Warish, 927 F.2d at 6. Under the second test, the plaintiff must demonstrate a violation of an identified liberty or property interest protected by the Due Process Clause. Id. Plaintiff fails to satisfy his burden of proving a substantive due process violation under either test. [2]

Under the first test, the alleged conduct is not sufficiently egregious as to "shock the conscience." The substantive due process doctrine is to be applied with "caution and restraint." Moore v. City of East Cleveland, 431 U.S. 494, 502, 97 S. Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion, Powell, J.). Moreover, the Second Circuit has noted with regard to the "shocks the conscience" test that "[t]he acts must do more than 'offend some fastidious squeamishness or private sentimentalism ...;' they must be such as 'to offend even hardened sensibilities,' or constitute force that is 'brutal' and 'offensive to human dignity.' " Johnson v.

---

[2] Termination from public employment alone cannot give rise to a substantive due process claim, for termination alone cannot fall into the category of government actions that are so impermissible that they can never be constitutionally undertaken "regardless of the fairness of the procedures used. Reed v. Town of Branford ,949 F.Supp. 87 (D.Conn.1996).

<u>Glick</u>, 481 F.2d 1028, 1033 n. 6 (2d Cir. 1973) cert. denied, 414 U.S. 1033, 94 S. Ct. 462, 38 L.Ed.2d 324 (1973).

Plaintiff asserts that Defendant Ilg told him that he did not like him, that he wanted him to resign, did not return his telephone calls, would not meet with him, and told a consultant working for the defendant that he was terminating the plaintiff.  Defendant's alleged treatment of plaintiff cannot be said to "shock the conscience." See <u>Santiago de Castro v. Morales Medina</u>, 943 F.2d 129, 130-32 (1st Cir. 1991) (supervisor's extensive criticism and defamation of teacher, though resulting in teacher suffering from anxiety disorder with depressive characteristics, not "conscience shocking").  See also <u>DeLeon v. Little</u> , 981 F.Supp. 728 ( D. Conn. 1997).

Under the second substantive due process test, plaintiff fails to demonstrate that defendants' conduct deprived him of a specific constitutionally guaranteed property right or liberty interest. See discussion, above.

As plaintiff was neither deprived of a constitutionally protected property or liberty interest, nor subjected to actions which "shock the conscience," there is no evidence of a substantive due process violation.  <u>DeLeon v. Little</u> , supra.

<u>Defendant Ilg is entitled to qualified immunity</u>

Recent Supreme Court rulings make clear that " [a] court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual

13

constitutional right at all.... In the event that this threshold determination reveals a possible constitutional violation, [a] qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." <u>Wilson v. Layne</u>, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed.2d 818 (1999); <u>Wilkinson v. Russell</u>, 182 F.3d 89, 102-03 (2d Cir. 1999) (citations and internal quotation marks omitted). The issues of whether a plaintiff has asserted a violation of a constitutional right at all, whether that right was clearly established at the time of the defendant's challenged actions, and whether the facts as alleged demonstrate that the defendant's actions were objectively reasonable are pure matters of law. <u>Martinez v. Simonetti</u>, 202 F.3d 625, 632 (2d Cir. 2000). <u>Parsons v. Pond</u> ,126 F.Supp.2d 205 (D.Conn.2000).

As discussed above, plaintiff cannot show a deprivation of an actual constitutional right at all. Therefore, defendant Ilg is entitled to qualified immunity. Even if, assuming arguendo, plaintiff had demonstrated a deprivation of a constitutional right, defendant Ilg would still be entitled to qualified immunity.

Under the second step of the <u>Wilson</u> qualified immunity analysis, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." <u>Wilson</u>, 526 U.S. at 615. The Second Circuit uses "three factors to determine whether a given right is 'clearly established.' First, whether it is 'defined with

14

reasonable specificity;' second, whether 'the decisional law of the Supreme Court or the appropriate circuit court has clearly established the right;' third, 'whether in light of preexisting law the unlawfulness of the defendant official's actions is apparent.' "<u>Charles W. v. Maul</u>, 214 F.3d 350, 360 (2d Cir. 2000).

Given the express provisions of the City Charter regarding the unclassified status of the Finance Director's position and the existing case law regarding the at-will status of unclassified employees, defendant Ilg did not violate clearly established law.

As to the third prong of the<u>Wilson</u> analysis of whether a defendant is entitled to qualified immunity, "[t]he objective reasonableness test is met--and the defendant is entitled to immunity-- if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." <u>Rohman v. N.Y. City Transit Auth.</u>, 215 F.3d 208, 216 (2d Cir. 1999). (citations and internal quotation marks omitted).  Given the express provisions of the City Charter regarding the unclassified status of the Finance Director's position and the existing case law regarding the at-will status of unclassified employees, defendant Ilg's actions were objectively reasonable.  He is, thus, entitled to qualified immunity.

Plaintiff's official capacity claims against defendant Ilg must fail

Plaintiff's Section 1983 claim against Albert Ilg in his official capacity must fail because public officials acting in their official capacities are not "persons" under Section 1983.  <u>Will v.</u>

Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); see also Richardson v. Metro. Dist.

Comm'n, Action No. 3:00 CV 1062 (JCH), 2003 U.S. Dist. LEXIS 12757, at *1 (D. Conn. July

23, 2003) (recognizing that "an official-capacity suit against a state officer is not a suit against

the official but rather is a suit against the State itself).


### III.    Plaintiff's breach of contract claim must fail

Under Connecticut state law, contracts for permanent employment or employment for an

indefinite term are terminable at the will of either party, whereas contracts for employment for a

definite term may be terminable only for just cause. See Sheets v. Teddy's Frosted Foods, Inc.,

179 Conn. 471, 474, 427 A.2d 385 (1980); Coelho v. Posi-Seal Int'l, Inc., 208 Conn. 106, 118,

544 A.2d 170 (1988). The mere fact that the plaintiff believed he had a promise for long term

employment is irrelevant unless the record demonstrates evidence from which the jury could

reasonably find that the defendant intended to enter into a contract for a definite term. See

Christensen v. Bic Corp., 18 Conn. App. 451, 458, 558 A.2d 273 (1989).

In the present case, plaintiff received a letter of employment which contained all the

agreed-upon terms regarding his employment as Finance Director.  The Connecticut Supreme

Court has explained that "[a] contract is to be construed as a whole and all relevant provisions

will be considered together." HLO Land Ownership Assoc. Ltd. V. City of Hartford, 248 Conn.

16

350, 356, 727 A.2d 1260 (1999). In interpreting contract terms, the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter. Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. Id. at 357. "[A]ny ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." Levine v. Massey, 232 Conn. 272, 279, 654 A.2d 737 (1995).

On its face, the plaintiff's letter of employment from city manager Kee-Borges contains no express term of years of employment or "just cause" requirement.  The letter indicates that it is a confirmation of a "our discussions and agreement with you" concerning plaintiff's appointment to the position of Finance Director and delineates the salary and benefits associated with that position.  Kee-Borges's reference to the prior discussions supports the position that the letter fully integrates all terms previously discussed.  The plaintiff also concedes this. ( Robinson deposition, p.p. 116-17, 118).  The item by item delineation of the salary, pay increases, moving expenses, paid vacation, sick leave, compensatory time, holidays and the other employment

benefits that plaintiff is to receive makes it clear that the letter was intended to encompass all aspects of the understanding of the parties.

In the case of <u>Swihart v. Country Home Bakers, Inc.</u>, No. CV97060945, 1998 WL 867327 (Conn. Super. Dec. 3, 1998), the plaintiff alleged the existence of a written employment contract for a term of years. In terms comparable to the Kee-Borges letter, the alleged written contract offered the plaintiff a managerial position with the starting date to be determined by mutual agreement. This letter to the plaintiff hiring her then set forth the amount of the bi-weekly salary and stated the full bonus potential. It referred to a company relocation package and a variety of fringe benefits the plaintiff would be entitled to receive.... The letter concluded by saying that the corporate official who sent it looks forward to her employment. The court, in finding that the agreement did not constitute an employment contract for a term of years, explained that "There is no offer of a definite term of employment; the letter merely states the terms of compensation and bonuses and fringe benefits that may be earned during the course of employment." <u>Id.</u> at 11. The Kee-Borges letter similarly makes no offer of a definite term of employment, but rather states the benefits that may be earned during the course of employment.

Kee-Borges's letter is an unambiguous, integrated agreement that contains no term of years or other measure of definite duration of employment. Without such a term or an explicit provision limiting reasons for termination to just cause, plaintiff was no more than an at-will

18

employee, and subject to termination for any or no reason.  See <u>MacKay v. Rayonier, Inc.</u>, 75 F.

Supp.3d 22 ( D. Conn. 1999).

Plaintiff, nevertheless, contends that oral statements made to him by Kee-Borges assuring

him lengthy employment and the opportunity to vest his pension in ten years and retire as

additional terms to his employment contract. There are two problems with plaintiff's contention.

First, Connecticut's Statute of Frauds,C.G.S. 52-550(a)(5), provides that no civil action may be

maintained on an agreement unless the agreement or a memorandum of the agreement is made in

writing and signed by the party or the agent of the party to be charged upon any agreement that is

not to be performed within one year of its making.  Plaintiff's breach of contract claim does not

meet the requirements of the Statute of Frauds.  There are no signed writings that embody these

alleged agreements.  Vesting of the plaintiff's pension, a ten year requirement, cannot be

performed within one year, as required by the statute in order for an oral agreement to suffice.

The agreement alleged by plaintiff could not have been completed, that is, plaintiff could not

have vested his pension, until after ten years of employment, or August of 2011.  Because

plaintiff's breach of contract claims do not meet the requirements of the Statute of Frauds,

defendants are entitled to summary judgment. <u>Redgate v. Fairfield University</u> , 862 F.Supp. 724

(D.Conn.1994).

19

Second, the plaintiffs' assertions that the defendants promised him future employment and the opportunity to vest his pension are also barred by the parol evidence rule. Where the parties have reduced their agreement to an integrated writing, the parol evidence rule prevents the admission of evidence of prior or contemporaneous negotiations or agreements offered to modify or contradict the terms of the writing. See Wallace Steel, Inc. v. Ingersoll-Rand Co., 739 F.2d 112, 115 (2d Cir. 1984). ("The parol evidence rule provides in substance that, where the parties have reduced their agreement to writing, evidence of prior or contemporaneous agreements may not be offered to contradict, vary, or subtract from the terms of the writing."). Even where an agreement is not fully integrated, parol evidence may be admitted to complete the agreement or to resolve some ambiguity therein, but it may not be admitted to vary or contradict its contents. See Rothberg v. Bernstein, 87 Civ. 2053, 1990 WL 58902, at 4 (S.D.N.Y. 1990); Cortland v. E.F. Hutton, Inc., 491 F. Supp. 1, 4 (S.D.N.Y. 1979).

For purposes of the parol evidence rule, a contract which appears complete on its face is an integrated agreement as a matter of law. Further, if a contract recites that all of the parties' agreements are merged in the written document, parol evidence is not admissible to vary, or permit escape from, the terms of the integrated contract. Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993); Apsan v. Gemini Consulting, Inc. , 1999 WL 58679 (S.D.N.Y.1999).

20

In the present case, rather than aid in interpreting the existing terms of the written agreement, the plaintiff attempts to add a new term that is not in located anywhere in the agreement. While parol evidence may be used to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement, nothing on the face of the plaintiff's employment agreement provides any indication that it is not complete.

## IV.    Plaintiff's breach of covenant of good faith and fair dealing must fail

Plaintiff alleges that he was terminated in violation of the implied covenant of good faith and fair dealing. In Magnan v. Anaconda, 193 Conn. 558, 479 A.2d 781 (1984), the Connecticut Supreme Court "declin[ed] the invitation of the plaintiff to transform the requirement of good faith into an implied condition that an employee may be dismissed only for good cause." Id, 193 Conn. at 571. Rather, the Connecticut Supreme Court explained that it would not "enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves 'impropriety ... derived from some important violation of public policy.' "Id at 572.

In order for an employee to establish a claim for breach of the implied covenant of good faith and fair dealing, he must allege either that an enforceable employment contract exists, or that the employer's actions in discharging the employee violated a recognized public policy.

21

Carbone v. Atlantic Richfield Co., 204 Conn. 460, 467, 528 A.2d 1137 (1987); Magnan, 193

Conn. at 572. However, the Connecticut Supreme Court has warned that "courts should not

lightly intervene to impair the exercise of managerial discretion or to foment unwarranted

litigation." Sheets v. Teddy's Frosted Foods, 179 Conn. at 477. Therefore, where a plaintiff

employee has failed to submit any evidence that an enforceable employment contract existed, or

that the termination was for some "demonstrably improper reason ... whose impropriety is

derived from some important violation of public policy," the court must grant a defendant

employer's motion for summary judgment. Cowen v. Federal Exp. Corp., 25 F. Supp.2d 33 (D.

Conn. 1998).

     The Restatement (Second) of Contracts similarly recognizes an implied covenant of good

faith and fair dealing in every contract without limitation. See 2 Restatement (Second),

Contracts 205 (1979). "Good faith performance or enforcement of a contract emphasizes

faithfulness to an agreed common purpose and consistency with the justified expectations of the

other party ...." Id. Essentially it is a rule of construction designed to fulfill the reasonable

expectations of the contracting parties as they presumably intended. The principle, therefore,

cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless,

possibly, those terms are contrary to public policy. See VTR, Inc. v. Goodyear Tire & Rubber

Co., 303 F. Supp 773 (S.D.N.Y. 1969).

Plaintiff does not allege, let alone demonstrate, that his termination was for some improper puporse or in violation of public policy.  Nor can he establish that he had an enforceable employment contract of a definite duration.  Accordingly, his claim of breach of the covenant of good faith and fair dealing must fail.

## V.    Plaintiff's promissory estoppel claim must fail

There are two essential elements to a promissory estoppel claim:  the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief and the other party must change its position in reliance on those facts, thereby incurring some injury...A person who claims estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge.  Connecticut National Bank v. Voog, 233 Conn. 352, 366, 659 A.2d 172 (1995)(citations omitted).  See also D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987).  Moreover, estoppel against a public agency is limited.  It may be invoked:  "(1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters: (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency."  Kimberly-Clark Corp. v. Dubno, 204 Conn. 137, 148, 527 A.2d 679 (1987).

Defendants have addressed above city manager Kee-Borges's lack of authority to contract with plaintiff for employment of a definite duration, or one terminable only for cause. Plaintiff cannot offer any facts which establish detrimental reliance. Plaintiff did not forego any other employment opportunities in order to assume the position of Finance Director for the City of Hartford. Indeed, the only detriment he claims is the loss of his posiiton with the City of Hartford. There are, thus, no special circumstnces which make it highly inequitable or oppressive not to estop the City of Hartford in this case.

In a similar case to the one at hand, the Connecticut Supreme Court considered representations made to a teacher at a private school that "everything looked fine for rehire for the next year," and that "[a]ll present faculty members will be offered contracts for the next year...." D'Ulisse-Cupo, 202 Conn. at 215-16. The court held that the lack of a present intention on the part of the defendants to undertake immediate contractual liability coupled with the absence of material terms which are essential to an employment contract rendered the representations insufficiently promissory and indefinite. In the present case, defendants' promises are likewise insufficiently promissory and insufficiently definite to justify plaintiff's reliance. The promises made to plaintiff were significantly less definite in their terms than those in D'Ulisse-Cupo and lacked the specificity which would show a present intention to contract. See Redgate v. Fairfield University 862 F.Supp. 724 (D.Conn.1994).

24

Under the doctrine of promissory estoppel, an implied employment contract may arise "where injustice to a promisee who has acted in reliance can be avoided only by enforcement of a clear and definite promise which a promisor could reasonably have expected to induce reliance" D'Ulisse-Cupo , 202 Conn. at 216.  In the employment context, a plaintiff must show that his employer "agreed either by words or action or conduct to undertake some form of actual contract[ual] commitment to him under which he could not be terminated without just cause." Id. See also Cowen v. Federal Exp. Corp., 25 F.Supp.2d 33 (D.Conn.1998).  Any representations concerning future employment must be sufficiently promissory or definite to support contractual liability-i.e., they must contain "the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of the plaintiff's employment, and [his] salary and fringe benefits." D'Ulisse-Cupo, 202 Conn. at 215 (emphasis added).

Even assuming arguendo that the alleged oral reassurances of continued job security were given to the plaintiff , they were "neither sufficiently promissory nor sufficiently definite to support contractual liability" when viewed in conjunction with the plaintiff's employment letter and the City Charter provisions.  defendant's various disclaimers concerning the plaintiff's at-will employment status.  D'Ulisse-Cupo, 202 Conn. at 214;  see, e.g., Barbuto v. The William Backus Hospital, No. 105452, 1995 WL 235068, at 5-6 (Conn. Super.April 13, 1995) (finding that representations that the defendant would never take away the plaintiff's position as long as she

25

wished to continue working a particular shift failed to constitute a definite promise of employment upon which the plaintiff could reasonably have relied because the representations manifested no present intention to undertake immediate contractual obligations to the plaintiff and did not contain any of the material terms essential to an employment contract); Emanuele v. Boccaccio & Susanin, Inc., No. CV 90 0379367S, 1992 WL 79823, at 2-3 (Conn. Super.April 10, 1992) (determining that oral statements that the plaintiff had nothing to worry about regarding her position and that her job was secure as long as she performed as she had in the past did not constitute a definite promise of employment upon which the plaintiff could reasonably have relied in support of her promissory estoppel claim). Grossman v. Computer Curriculum Corp., 131 F.Supp.2d 299 (D.Conn.2000).

## VI.    Plaintiff's negligent infliction of emotional distress claim must fail

"In order to recover on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." Gomes v. Commercial Union Ins. Co., 258 Conn. 603, 783 A.2d 462 (2001). As the claim is one for negligence, the conduct must be unreasonable in order to serve as a basis for liability. Id. at 472. (using the familiar rubric of duty, breach, causation and injury when analyzing claim

26

for negligent infliction of emotional distress); <u>Parsons v. United Technologies Corp.</u>, 243 Conn. 66, 89, 700 A.2d 655 (1997). (holding that employer's actions in terminating employee were not so unreasonable as to support cause of action for negligent infliction of emotional distress); see also <u>Temple v. Gilbert</u>, 86 Conn. 335, 85 A.380 (1912) ("Negligence is the failure to use that degree of care for the protection of another that the ordinarily reasonably careful and prudent man would use under like circumstances").

Because emotional distress in the workplace is not uncommon, courts have "viewed the application of the [negligent infliction of emotional distress] doctrine to employment relationships with some alarm."<u>Hernandez v. City of Hartford</u>, 30 F. Supp. 2d 268, 273 (D. Conn. 1998). Moreover, the Connecticut Supreme Court has stated that, in the employment context, "courts should not lightly intervene to impair the exercise of management discretion or to foment unwarranted litigation."<u>Sheets</u>, supra, 179 Conn. at 477. Therefore, courts have been concerned about the expansion of this claim in the employment context and have kept a "tight rein" on these claims. <u>Hernandez</u>, 30 F. Supp. 2d at 273.

To that end, Connecticut courts have held that "even an employer's wrongful employment actions are not enough to sustain a claim for negligent infliction of emotional distress." <u>Id.</u>. To state a claim for negligent infliction of emotional distress, the complaint must include allegations of unreasonable conduct in the manner in which the employer carried out an employment action.

27

Id. Moreover, to be unreasonable, the employer's conduct must be humiliating, extreme, or outrageous. See Johnson v. Chesebrough-Ponds, Inc., 1996 WL 734043 (2d Cir. 1996); Parsons, supra, 243 Conn. at 88 (affirming the trial court's striking of a negligent infliction claim, where the trial court defined unreasonable conduct as humiliating and rejected the suggestion from another court that conduct that is embarrassing or inconsiderate is actionable); Brown v. Nationscredit Commercial Corp., 2000 WL 306947 (D. Conn. 2000) ("Connecticut courts have uniformly held extreme and outrageous behavior" is required); Roberts v. Andersen Laboratories, 1997 WL 663303 (Conn. Super. 1997) ("An essential element of the tort is conduct that is extreme and outrageous").

Simply put, there is not enough in this case to support a claim of negligent infliction of emotional distress. In the absence of facts indicating that the defendant conducted employment activities in a humiliating, extreme, or outrageous manner, the complaint does not state a claim for negligent infliction of emotional distress. In short, plaintiff's allegations do not rise to the required level of unreasonableness to state a claim for negligent infliction of emotional distress. Accordingly, plaintiff's claim of negligent infliction of emotional distress must fail.

## CONCLUSION

For all of the foregoing reasons, the defendants' motion for summary judgment should be granted.

DEFENDANTS

BY _____
Helen Apostolidis
Assistant Corporation Counsel
Their Attorney
550 Main Street
Hartford, CT 06103
Federal Bar No. CT 05534
Telephone (860)543-8575

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, this 2nd day of February 2004 to:

M. Hatcher Norris, Esq.
Butler, Norris & Gold
254 Prospect Avenue
Hartford, CT 06106

_____
Helen Apostolidis