

FILED
FEB 2 2 [illegible] '04

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD V. ROBINSON | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| v. | : | 3:02 CV 2197 (MRK) |
| | : | |
| CITY OF HARTFORD, ET AL | : | FEBRUARY 1, 2004 |
| Defendants | : | |

### DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendants, CITY OF HARTFORD and ALBERT G. ILG, hereby submit this Statement of Facts Not In Dispute pursuant to Local Rule of Civil Procedure 56(a)(1):

1. Sometime in the Spring of 2001, while employed in Alexandria, Egypt, Richard Robinson saw an advertisement for the Finance Director's position in the City of Hartford in the ICMA (International City Managers Association) newsletter. The advertisement made no

representations regarding the longevity of the Finance Director's position. (Robinson deposition, attached as Exhibit A, p, 77, 84).

2. In response to the advertisement, Richard Robinson submitted his resume to the recruiting firm, the Mercer Group. (Robinson deposition, p.77, pp.82-84; Exhibit B, plaintiff's resume).

3. In connection with the recruitment for a Finance Director, the City of Harford, with the assistance of the recruitment firm, the Mercer Group, issued an announcement/invitation for the position. (Exhibit C).

4. Richard Robinson saw this announcement/invitation at some point during the recruitment process. (Robinson deposition, p.77)

5. Richard Robinson asked an individual from the Mercer Group whether a contract was being offered for the Finance Director's position and was told he would have to talk to the City Manager. ( Robinson deposition, p. 87, pp. 89-90).

6. Richard Robinson was interviewed by City Manager Saundra Kee Borges and her assistants. After discussion and negotiations, Robinson

was offered the position. By letter dated June 5, 2001, City Manager Saundra Kee Borges confirmed the discussions and agreement with Richard Robinson regarding his appointment to the position of Finance Director for the City of Hartford. Such letter, with attachments, stated the terms and conditions of Mr. Robinson's employment and contained all the agreements he had made with the City Manager prior to his appointment. The Kee Borges letter of employment memorialized the discussions Mr. Robinson had with the city manager. There were no other terms and conditions of employment upon which he reached agreement with Kee Borges that are not set forth in the June 5, 2001 letter. (Exhibit D; Robinson deposition, pp. 116-118)

7. Mr. Robinson asserts that the following representations were made to him during the interview and selection process for the Finance Director position:

- City Manager Saundra Kee Borges told him during his interview, "finance directors have always retired from this job. They've never been fired". (Robinson deposition, p.79)

- Someone from the recruiting firm, the Mercer Group, said that finance directors in Hartford stayed until retirement. (Robinson deposition, p. 89, 92).

- He asked for a contract for the position but was told none was being offered. (Robinson deposition, p. 96, 107).

8. Richard Robinson relocated from Egypt to Hartford, Connecticut and established residence there. Some time later he purchased a home in the City of Hartford, but was not required to do so by the City of Hartford. (Robinson deposition, pp. 13-14.)

9. Mr. Robinson's employment in Egypt was about to end at about the time he assumed the position of Finance Director, as the contract awarded to his employer was set to expire. (Robinson deposition, pp. 74-76).

10. Chapter XVI, Section 7 of the Charter of the City of Hartford provides that heads of departments are unclassified employees. (Exhibit E)

11. The Finance Director is the head of the Department of Finance, and, therefore, an unclassified position. It is not a civil service position. (Exhibit C; Robinson deposition, p.119)

12. Chapter V, Section 4 of the City of Hartford Charter provides that the city manager shall appoint and has the power to remove, inter alia, all department heads, except those in the classified service; and further provides the opportunity for a hearing to employees subject to such removal. Chapter V, Section 4 of the Charter places no substantive limitation on the removal of unclassified department heads. (Exhibit E)

13. By contrast, the City of Hartford Personnel Rules and Regulations, were adopted to give effect to the provisions of the Charter covering positions in the classified service. The Personnel Rules and Regulations provide that classified employees may be dismissed for just cause. (Exhibit F,

City of Hartford Personnel Rules and Regulations, Rule I, Section 1; Rule XII, Section 4)

14. Saundra Kee Borges was replaced as City Manager by Albert Ilg, and Richard Robinson began reporting to him. (Robinson deposition, p. 129-30).

15. In April 2002 Albert Ilg met with Richard Robinson in his office and expressed to him that he had lost confidence in him as Finance Director and wanted him to resign, and would give him until the end of the fiscal year (June 30) to find another job. (Robinson deposition, pp. 133-36)

16. Richard Robinson told Albert Ilg a couple of days later that he would not resign. (Robinson deposition, p. 139)

17. By letter dated July 29, 2002, defendant Ilg notified the plaintiff of his intention to remove him from his position of Finance Director with the City of Hartford; advised him that, since the plaintiff served at the pleasure of the city manager, the reason for his removal was the latter's legal right to do so; and advised him on his right to be heard prior to such

     removal, in accordance with Chapter V, Section 4 of the City Charter. (Exhibit G)

18. The hearing pursuant to Chapter V, Section 4 of the City of Hartford Charter was held on August 9, 2002. Plaintiff, who had been provided with a copy of the hearing protocol prior thereto, appeared with his counsel and presented argument in support of his position. (Exhibit H, hearing protocol and hearing transcript).

19. Following the hearing, by letter dated August 13, 2002, Albert Ilg notified Richard Robinson that he had decided to remove him from his position as Finance Director. (Exhibit I)

20. Richard Robinson asserts that Albert Ilg was oppressive, arbitrary and capricious and harbored malice against him because:

    - Albert Ilg told him that he didn't like him
    - Albert Ilg did not tell him that his performance was deficient.
    - Albert Ilg told him that he wanted him to leave the City's employ, to resign

matfact         7

- He called Albert Ilg and requested to meet with him but did not receive a response and left voice –mail messages for him to which Ilg did not respond.

- He believes that Albert Ilg discussed his termination with other people, because Robinson heard about Ilg wanting to fire him from other people outside the City of Hartford.

- Albert Ilg isolated him and Robinson did not participate in budget meetings (Robinson deposition, p. 133, 135, 182, 197-98, 202, 225-230)

- Robinson believes that Ilg intended to harm him because he deliberately did not include him in meetings.

- That Ilg's only improper motive was to force Robinson to leave the City's employ.

21. Richard Robinson understands his contractual agreement with the City of Hartford to be the June 5, 2001 Kee Borges letter offering him employment, and any rules or procedures or past practices or precedents

that the City had in how it treated its employees. ( Robinson deposition, pp. 178-79).

22. Richard Robinson believes that he would stayed with the City of Hartford and vested his pension and then retired because :he had a personal commitment to staying there for that period of time; family genealogical history and longevity factors lead him to that conclusion; his letter of employment; the fact that he likes his work and does well at it; that he would not have been selected for the position of Finance Director if his background didn't demonstrate that he does well in his work. (Robinson deposition, pp. 207-208)

DEFENDANTS

BY_____
Helen Apostolidis
Assistant Corporation Counsel
Their Attorney
550 Main Street
Hartford, CT 06103
Federal Bar No. Ct 05534
Telephone (860) 543-8575
Facsimile (860) 722-8114

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, this 2nd day of February 2004 to:

M. Hatcher Norris, Esq.
Butler, Norris & Gold
254 Prospect Avenue
Hartford, CT 06106

_____
Helen Apostolidis

matfact                                           10