**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**RICHARD V. ROBINSON**          :  **CIVIL ACTION NO.**

**vs.**                          :  **3:02CV2197 (MRK)**

**CITY OF HARTFORD and**
**ALBERT G. ILG**                :  **MARCH 22, 2004**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A.    PRELIMINARY STATEMENT:**

The plaintiff, **RICHARD V. ROBINSON**, by and through his undersigned counsel,

hereby submits this memorandum of law in opposition to the defendants' motion for summary

judgment dated February 2, 2004. This action was commenced in the Superior Court for the

State of Connecticut by service of a summons and complaint on October 30, 2002.  Said

complaint was returnable to the Superior Court on December 7, 2002. On December 12, 2002,

the defendants filed a petition for removal from the Connecticut Superior Court to this Court.

The plaintiff filed an amended eight-count complaint dated January 28, 2003.  Thereafter, a

second amended complaint was filed on or about November 4, 2003 deleting Count Eight of

the amended complaint.

The first and second counts of the second amended complaint state claims against defendants City of Hartford and Albert Ilg for violations of the plaintiff's property interest in his job as the Finance Director for the City of Hartford.  Counts three and four of the second amended complaint state claims against the City of Hartford and Albert Ilg for violations of the plaintiff's substantive due process rights.  Counts five, six and seven state claims against the City of Hartford for breach of contract, breach of the covenant of good faith and fair dealing and promissory estoppel, respectively.  The defendants have not filed an answer to the complaint.

As set forth below, the defendants' motion for summary judgment should be denied.

**B.    STATEMENT OF FACTS:**

The City of Hartford advertised for the position of Finance Director making the following representation:  "[t]he current vacancy is being created by the retirement of a finance professional who was employed by the City of Hartford for 20 years.  There have only been five Finance Directors since 1946 . . .  The Finance Director is also required to establish residency in the City of Hartford within six month (sic) of being hired."  (See **Exhibit C** attached to Defendants' Motion for Summary Judgment").[1]

---

[1]  Plaintiff has made reference throughout to Exhibits attached to defendants' motion for summary judgment and incorporate said Exhibits herein.

Richard Robinson responded to the written announcement/invitation for the position of Finance Director for the City of Hartford.   (Robinson deposition , Page 77). The Mercer Group, Inc., acted as a recruiting firm for the City of Hartford. (See **Exhibit C** attached to Defendants' Motion for Summary Judgment").

Prior to accepting the position of Finance Director, Plaintiff inquired of the City of Hartford and Mercer Group regarding the longevity of the position of finance director and was advised that finance directors had stayed until retirement.  (**Robinson deposition, pp. 89-96;108-108**). Plaintiff relied on the representation regarding longevity of position of Finance Director in accepting the position and relocating to Hartford from Egypt.   (**Robinson deposition, pp. 245-247**).

The plaintiff received a letter from the City Manager of Hartford dated June 5, 2001 confirming his appointment as Finance Director.  (See **Exhibit D** attached to Defendants' Motion for Summary Judgment").The letter of June 5, 2001, represented that Plaintiff would being work on Monday, August 6, 2001 and that on or before June 30, 2002, a performance evaluation will be conducted. (See **Exhibit D** attached to Defendants' Motion for Summary Judgment").

On December 12, 2001, Albert Ilg assumed that position of interim City Manager of the City of Hartford (hereinafter referred to as "Ilg"). (**Ilg deposition, at p. 6**).  On April 16, 2002,

Ilg met with Mr. Robinson and informed him that ". . . we need to make a change in the finance director for the city."  (**Ilg deposition, p. 18**). Ilg also informed Mr. Robinson that he, Robinson, should resign and gave no reasons for this demand to Mr. Robinson.  (**Robinson deposition, pp. 134-136**). April 16, 2002 was the first time Ilg ever communicated to Richard Robinson that he, Ilg, was concerned with Mr. Robinson's ability. (**Ilg deposition, p. 20**).

Although the appointment letter of June 5, 2001 called for a performance evaluation on or before June 30, 2002, Ilg believed that his demand for Plaintiff's resignation "precluded a performance evaluation."  (**Ilg deposition, p. 19**).

As of April 16, 2002, Albert Ilg was not familiar with the description prepared by the Mercer Group of the experience, knowledge, training and references of Mr. Robinson.  (**Ilg deposition, p. 42).**  Ilg believes that the City Manager could have offered Mr. Robinson a job, have him relocate from Egypt, buy a home and then on his second day on the job advise Mr. Robinson that he does not want Mr. Robinson here.  (**Ilg deposition, pp. 247-248**).

Ilg never, prior to April 16, 2002, advised Mr. Robinson that his performance as Finance Director was deemed to be deficient in any manner.  (**Robinson deposition, pp. 247-248**).

As of the date of April 16, 2002, Mr. Robinson, in reliance on the City's representations regarding longevity of employment, had signed a promissory note to purchase time for the

pension plan with the intention to be vested upon retirement.  (**Robinson deposition, pp. 95-96; 247**).

Ilg agrees that the representations in the solicitation for the position of Finance Director accepted by Mr. Robinson are that the position offered is one in which an individual may expect to stay with for many years.  (**Ilg deposition, p. 46**).

Mayor Edward Perez was not aware, as of the termination of Mr. Robinson, of the representations made by the City of Hartford regarding the longevity of prior Finance Directors in the solicitation of the position filled by Mr. Robinson.  (**Perez deposition, p. 19-20**).

The stated grounds for removal of the Plaintiff from the position of Finance Director were the legal right of Albert Ilg to remove Plaintiff.  (**Perez deposition, p. 22; Ilg deposition, p. 41**).

C.    **ARGUMENT**

**POINT I**

**SUMMARY JUDGMENT SHOULD NOT ENTER AS TO
THE PLAINTIFF'S DUE PROCESS CLAIMS**

Summary judgment is only appropriate where the "pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  When reviewing a motion for summary judgment all reasonable doubts and inferences must be resolved in favor of the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The movant has the initial burden of demonstrating the absence of any genuine issue and entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The inquiry into whether a "genuine issue" of material fact exists is defined by whether "the evidence is such a reasonable jury could return a verdict for the nonmoving party." Id. That burden is met only if the record reflects no basis on which the trier could find for the non-movant. Remine v. Deckers, 871 F. Supp. 1538, 1540 (D. Conn. 1995). Where reasonable minds could differ as to the import of the evidence, summary judgment is not proper. Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

A public employee, with a "legitimate" claim of entitlement" to continued employment has a property interest protected by the Due Process Clause of the Fourteenth Amendment. Board of Regents v. Roth, 408 U.S. 564, 577 (1971). Deprivations of such property interests require a prompt pre-deprivation hearing with a meaningful opportunity to be heard. Id. at 569-70; Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 542 (1985). It is clearly established that an employee serving under conditions where he cannot be terminated except for cause has a protected property interest. S&D Maintenance Co. v. Goldin, 844 F.2d 962, 967 (2d Cir. 1988); Croslan v. New Britain Housing Authority, 974 F.Supp. 161, 165 (D. Conn. 1997).

The defendants contend that Mr. Robinson has no property interest in his position as Finance Director because he could be terminated without cause. This is not true. Under Charter for the City of Hartford, Mr. Robinson could not be removed without cause.

Chapter V, Sec. 4 of the City of Hartford Charter (**Exhibit E** of Defendants' Motion for Summary Judgment), provides, in pertinent part, that the City Manager ". . . shall have power to remove any officer or employee shall have been served with a written notice of the intention of the city manager to remove him, containing a clear statement of the grounds for such removal and of the time and place, not less then ten (10) days after the service of notice, at which he shall be given the opportunity to be heard thereon." The City Manager gave written notice of intention to remove the Plaintiff from the position of Finance Director by letter dated

July 29, 2002 (**Exhibit G** of Defendants' Motion for Summary Judgment).  Said letter states "… the grounds for your removal are the City Manager's legal right to remove you at his discretion."  The plaintiff was never presented with the charges against him and never provided an opportunity to present evidence or to cross-examine the proponent of the charges.  Plaintiff submits that the letter of July 29, 2002 fails to set forth a statement of the grounds for his removal as required by the City of Hartford Charter.  Said letter only references the right of a City Manager to effect such removal but the grounds or basis for such removal were never provided to the Plaintiff.  As such, a genuine issue of material fact exists.

The defendants also claim the plaintiff's substantive due process claim fails because the plaintiff has no protected property interest and because the defendants' conduct did not "shock the conscience." As set forth above, the plaintiff has a protected property interest.

The Due Process Clause was intended to prevent government officials "from abusing their power, or employing it as an instrument of oppression." County of Sacramento v. Lewis, 523 U.S. at 846 (quoting Collins v. Harker Heights, 503 U.S. 115, 126 (1992)). "The touchstone of due process is protection of the individual against arbitrary action of government." County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998). "Substantive due process rights guard against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." Tenenbaum v. Williams,

8

193 F.3d 581, 599-600 (2d Cir. 1999), <u>cert</u>. <u>denied</u>, 120 S.Ct. 1832 (2000)(citing <u>County of Sacramento v. Lewis</u>, 523 U.S. at 846). Conduct that is arbitrary or without justification states a substantive due process claim.

     As noted above, the City of Hartford Charter provides that the Plaintiff must receive a clear statement of the grounds of his removal.  The failure of the City Manager to comply with such Charter was arbitrary and without justification giving rise to a substantive due process claim.

     Moreover, there is a genuine of material fact as to whether the conduct of the defendants is conscience-shocking.  In this Circuit, a substantive due process claim requires government action that is either "arbitrary, conscience-shocking, or oppressive in a constitutional sense." <u>Lowrance v. Achtyl</u>, 20 F.3d 529, 537 (2d Cir. 1994). The measure of what is "conscience-shocking" cannot be assessed by a calibrated yard stick, duplicates no traditional category of common law fault and must be assessed on the facts of each case. <u>County of Sacramento v. Lewis</u>, 523 U.S. at 847-849. In <u>Lewis</u>, the Supreme Court, stated that action meeting this standard would encompass "conduct intended to injure in some way unjustifiable by any government interest" or  "deliberate decisions of government actors to deprive a person of life, liberty, or property." <u>Id</u>. at 848. The Supreme Court further noted that

9

reckless conduct, that is to say, a standard of culpability between negligence and intentional conduct, may also suffice. Id.

In the submission before this Court, Plaintiff has set forth facts which support the claims that the defendants' conduct is conscience shocking. Plaintiff responded to an advertisement for the position of Finance Director for the City of Hartford which made representations regarding the longevity of previous Finance Directors. (**Exhibit C** of Defendants' Motion for Summary Judgment). Additionally, Plaintiff was advised by the City Manager and the Mercer Group that Finance Directors had stayed until retirement and although city managers had come and gone, Finance Directors had kept on and that was not an issue. (**Robinson deposition, pp. 89-96; 106-108**). Plaintiff relied on those representations regarding longevity of the position in relocating from Egypt to Hartford with his wife. (**Robinson deposition, pp. 145-247**). Furthermore, the letter of appointment (**Exhibit D** of Defendants' Motion for Summary Judgment), informed plaintiff that a performance evaluation would be conducted on or before June 30, 2002. Plaintiff was never advised that his performance was deficient in any manner. (**Robinson deposition, pp. 247-248**). On April 16, 2002, Defendant Ilg informed the plaintiff that Plaintiff should resign. (**Ilg deposition, p. 18; Robinson deposition, p. 134-136**). This demand for resignation was done without the promised performance evaluation. (**Ilg deposition, p. 19**). In fact, Ilg believed that he could have

offered Robinson a job, had him relocate from Egypt and then on his second day terminate him. (**Ilg deposition, pp. 247-248**).  Despite the mandate of the City Charter that Robinson be provided "a clear statement of the grounds for such removal," no such statement of grounds were ever provided to the plaintiff.  On the April 16, 2002 meeting, Ilg only informed the plaintiff that he, Ilg, did not like the plaintiff.  (**Robinson deposition, p. 245**).  Plaintiff, who had moved from Egypt with his wife, bought a home in Hartford, executed a promissory note to purchase time for the pension plan and had relied on representatives of longevity of the position, was terminated without a promised performance evaluation  nor a clear statement of grounds for removal.  (**Robinson deposition, pp. 12-15; 110-111; 245-247; and 134-136**).

## POINT II

## <u>DEFENDANT ILG IS NOT ENTITLED TO QUALIFIED IMMUNITY</u>

As alleged in Counts One and Two of the amended complaint, the defendant Ilg is sued in his individual capacity for violating Mr. Robinson's rights under the Due Process Clause of the United States Constitution.  Ilg seeks to skirt liability contending that the plaintiff cannot establish a violation of a constitutional right and that it was objectively reasonable for him to believe Mr. Robinson could be terminated from his employment without cause.

Qualified immunity is an affirmative defense and the burden of proof lies with the official asserting it. Houghton v. South, 965 F.2d 1532 (9th Cir. 1992). That immunity shields government officials from suit for acts and omissions committed in their individual capacities provided their conduct did not violate clearly established constitutional rights,[2] or if it was objectively reasonable for them to believe that their conduct did not violate those rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). As to the latter, the defendant must demonstrate his belief that his conduct comported with clearly established rights and that such belief was reasonable. See Gardiner v. Incorporated Village of Endicott, 50 F.3d 151, 156 (2d Cir. 1995). Qualified immunity is not available to unscrupulous public officials who wield "power in a wholly unjustified manner." See Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949). The defendant cannot make such a showing.

Defendant Ilg was bound by the City of Hartford Charter to provide the plaintiff with a clear statement of grounds for such removal. As demonstrated by the letter of July 29, 2002 (**Exhibit G** of Defendants' Motion for Summary Judgment), Ilg provided Plaintiff with no statement of grounds for removal but asserted his right to remove at his discretion. Furthermore, plaintiff was never provided grounds for his removal, an opportunity to confront witnesses or a

---

[2]    A right is clearly established for this purpose if it meets one of three tests: (1) it is defined with reasonable clarity; (2) the Supreme Court or this Circuit has affirmed its existence; or (3) a reasonable defendant would understand from existing law that his acts were unlawful. Cook v. Sheldon, 41 F.3d 73, 78 (2d Cir. 1994). Notably, the defendant does not claim that the rights asserted by Mr. Robinson in the amended complaint were not clearly established.

meaningful hearing.  The hearing which was conducted (**Exhibit H** of Defendants' Motion for Summary Judgment) establishes that, despite demand, the only ground for removal propounded was the claim of the right of the City Manager to remove Plaintiff at his discretion.

Moreover, summary judgment is only appropriate if "no reasonable juror, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to plaintiffs, could conclude that it was objectively reasonable for the defendant to believe that he was acting in a fashion that did not violate an established federally protected right." Wachtler v. County of Herkimer, 35 F.3d 77, 80 (2d Cir. 1994) (citations omitted). Indeed, this Court may only decide the issue of qualified immunity on summary judgment "where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required. Olivera v. Mayer, 23 F.3d 642, 649 (2d Cir.), cert denied, 115 S.Ct. 722 (1994)(citations omitted) (reversing grant of summary judgment on defense of qualified immunity); Ayengi v. Mottola, 35 F.3d 680, 689 (2d Cir. 1995)(disputed facts entailed that jury should answer whether conduct of official was objectively reasonable); Kaminsky v. Rosenblum, 929 F.2d 922, 927 (2d Cir. 1991); Rivera v. United States, 928 F.2d 592 (2d Cir. 1991); Calamia v. City of New York, 879 F.2d 1025, 1036 (2d Cir. 1989). The material facts germane to the assertion of qualified immunity are in dispute.

Qualified immunity is not available with regard to the plaintiff's due process claims.  As set forth above, there is a genuine issue of material fact as to whether the conduct of Defendant Ilg

violated Plaintiff's property interest or was arbitrary, unreasonable or conscience-shocking. Such a finding establishes a due process violation and precludes the defense of qualified immunity. TLC Development, Inc. v. Town of Branford, 855 F. Supp. 555, 559 (D. Conn. 1994).


## POINT IIII

## ILG MAY BE SUED IN HIS OFFICIAL CAPACITY

Relying on Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the defendants contend that Ilg may not be sued in his official capacity because public officials in there official capacities are not "persons" within 42 U.S.C. § 1983. In Will, however, the Supreme Court stated that "a [public] official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official capacity actions for prospective relief are not treated as actions against the state." Will v. Michigan Department of State Police, 491 U.S. at 71 n. 10. See also Green v. Mansour, 474 U.S. 64, 68 (1985)(citing Ex Parte Young, 209 U.S. 123, 155-156 (1908))(The Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law).  The plaintiff is also seeking such injunctive relief in this case.

**POINT IV**

**THE PLAINTIFF HAS A CLAIM FOR BREACH OF CONTRACT**

The defendant contends that Mr. Robinson's written contract of employment was terminable at will. The record, however, flatly contradicts that assertion.

Since parties generally do not insert meaningless terms into their agreements, every provision must be given effect if reasonably possible. Albert Mendel and Son, Inc. v. Krogh, 4 Conn. App. 117, 492 A.2d 536 (1985)(citing Hatcho Corp. v. Della Pietra, 195 Conn. 18, 23, 485 A.2d 1285 (1985)). The contract in this case (**Exhibit D** of Defendants' Motion for Summary Judgment), provided that plaintiff would receive a performance evaluation "on or before June 30, 2002." Such was never performed and plaintiff was demanded to resign without ever having such performance evaluation nor having been informed that his performance was deficient in any manner. (**Ilg deposition, pp. 19-20, Robinson deposition, pp. 247-248**).

Moreover, ambiguities in a contract are resolved against the drafter of the contract. Sturman v. Stocha, 191 Conn. 1, 9, 463 A.2d 527 (1983). In this case, the City of Hartford drafted the offering letter to Mr. Robinson and therefore any ambiguities therein must be resolved in his favor.

The defendant also contends that any oral agreement would be unenforceable because it could not be performed within one year. This is not true. Mr. Robinson's term of employment could have ended within a year if he was discharged for just cause.

The defendant contends that its promises of future employment are barred by the parole evidence rule. This is not correct. As the defendant concedes, the parole evidence rule is a rule of substantive law principle that prevents introduction of evidence that contradict the terms of an integrated agreement. First, such evidence does not contradict the defendant's written offer, but explains the terms employed and resolves any potential ambiguity. See Tie Communications, Inc. v. Kopp, 218 Conn. 281, 289-90, 589 A2d. 329 (1988)(Parole evidence is admissible to "(1) explain an ambiguity appearing in an instrument; (2) to prove a collateral oral agreement that does not vary the terms of the writing; (3) to add a missing term in writing which indicates on its face that it does not set forth the complete agreement; or (4) to show fraud ore mistake.").  Moreover, there is no evidence that the written offer was fully integrated as to preclude such extrinsic evidence.  Id.

## POINT V

### THE DEFENDANT BREACHED THE IMPLIED
### COVENANT OF GOOD FAITH AND FAIR DEALING

The defendant argues that the plaintiff cannot prevail on his claim that the defendant breached the covenant of good faith and fair dealing. Specifically, the defendants assert that the plaintiff is unable to demonstrate that his termination breached an enforceable agreement. As set forth above, the record shows a breach of an enforceable agreement.   The defendant also asserts that there no evidence that the plaintiff's termination was motivated by an improper purpose, or violated public policy.  A termination of a public employee in violation of his due process rights, clearly contravenes public policy.  In any event, Connecticut law is not constrained by public policy considerations or bad motives.

 "Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement."  Gupta v. New Britain General Hospital, 239 Conn. 574, 598, 687 A.2d 111 (1996).  "The implied covenant of good faith and fair dealing requires faithfulness to an agreed common purpose and consistency with the justified expectation of the other party in the performance of every contract."  Southbridge Associates, LLC v. Garofalo, 53 Conn. App. 11, 16, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999).  "Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they

presumably intended.  <u>Magnan v. Anaconda Industries, Inc</u>., 193 Conn. 558, 567, 479 A.2d 781 (1984).

To state a claim for breach of the covenant of good faith and fair dealing, there must be proof of following: (1) that the plaintiff and the defendant were parties to a contract where the plaintiff reasonably expected to receive certain benefits; (2) that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and (3) that when committing the acts by which it injured the plaintiff's right to receive benefits that he reasonably expected to receive that the defendant acted in bad faith. <u>DSM, Inc. v. Sentry Select Ins., Inc</u>., 2002 WL 652424 (Conn. Super. 2002).

The facts demonstrate that the plaintiff could reasonably have expected a performance evaluation on or before June 30, 2002 and relied on representations of longevity of the position of finance director from the City Manager and the Mercer Group.  (**Robinson deposition, pp. 89-96; 106-108**).  The defendants knew that Robinson had relocated with his wife from Egypt, purchased a house in Hartford as required by the City's residency requirement and executed a promissory note to purchase time towards a City pension.

The absence of good faith is bad faith.  <u>Habetz v. Condon</u>, 224 Conn. 231, 236-37, 618 A.2d 501 (1992).  The arbitrary actions of Defendant Ilg in terminating Plaintiff without the

decency of stating clear grounds for such removal as required by City Charter, is a clear demonstration of bad faith and a breach of the covenant of good faith and fair dealing.

## POINT VI

## ALTERNATIVELY, THE PLAINTIFF HAS A PROMISORY ESTOPPEL CLAIM

The doctrine of promissory estoppel serves as an alternative basis to enforce a contract in the absence of competing common-law considerations. D' Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987). Under that doctrine, a promise which the promissory should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only be enforcement of the promise. Id.

The defendant argues that the plaintiff cannot establish detrimental reliance because there were no evidence that the plaintiff received assurance for long-term employment.

As set forth hereinabove, Plaintiff did rely on representations from the City Manager and Mercer Group regarding longevity of the position of Finance Director.  (**Robinson deposition, pp. 89-96; 106-108**).  In reliance thereon, he and his wife relocated from Egypt to Hartford, purchased a home in Hartford and he executed a promissory note for time towards a City pension.  Clearly, there is a genuine issue of material fact as to detrimental reliance.

**POINT VII**

Defendants have addressed the issue of a claim of negligent infliction of emotional distress.  Plaintiff notes that such claim was withdrawn by the filing of a Second Amended Complaint dated November 4, 2003 which eliminated the eighth count is Plaintiff's Amended Complaint.

**D.     <u>CONCLUSION</u>:**

Based on the foregoing and in the interests of justice, the plaintiff respectfully requests that the defendants' Motion for Summary Judgment be denied in its entirety.

Dated at Hartford, Connecticut on this 22nd day of March, 2004.

PLAINTIFF,
RICHARD V. ROBINSON


By_____
  M. Hatcher Norris, Esq.
  BUTLER NORRIS & GOLD
  254 Prospect Avenue
  Hartford, CT  06106
  Tel. No. (860) 236-6951
  Federal Bar No. ct 00061

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed postage prepaid, via first-class mail on this 22nd day of March, 2004 to:

Attorney Helen Apostolidis
Assistant Corporation Counsel
550 Main Street
Hartford, CT 06103

The Honorable Mark R. Kravitz
United States District Court
District of Connecticut
141 Church Street
New Haven, CT 06510
**(CHAMBERS COPY)**

_____
M. Hatcher Norris, Esq.

United States District Court
District of Connecticut
Clerk's Office
141 Church Street
New Haven, CT  06510